IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00366-MR

| JAMES DARIN SISK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| KEVIN HOLDEN, et. al., | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment [Doc. 19].

**I.     PROCEDURAL BACKGROUND**

On December 20, 2018, Plaintiff James Darin Sisk ("Plaintiff"), proceeding *pro se,* filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while he was a pre-trial detainee at the Transylvania County Detention Center ("Detention Center") in Brevard, North Carolina, based on the alleged use of excessive force by Defendant Kevin Holden, identified as a Lieutenant with the Transylvania County Sheriff's Office ("Sheriff's Office"). [Doc. 1]. On August 20, 2019, the Court conducted a frivolity review of the Plaintiff's Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A, and allowed Plaintiff's claim against Defendant Holden to

proceed, but ordered Plaintiff to file an amended complaint within 20 days to state the relief he is seeking in the action and to more clearly state what injuries he alleges occurred as a result of Defendant Holden's conduct. [Doc. 8]. Plaintiff filed an Amended Complaint in which he sought to add two more Defendants: Jimmy Harris, identified as the mayor of Transylvania County, and Joshua Laughter, identified as a Sergeant with the Transylvania County Sheriff's Office.[1] [Doc. 9].

In his Amended Complaint Plaintiff alleged, in pertinent part, that on May 26, 2016, while Defendant Holden was booking Plaintiff for a property damage charge at the Detention Center, he "insulted" Plaintiff and then grabbed him by the throat, "choked and repeatedly slammed [Plaintiff] against the wall, while handcuffed [to a bench] and unable to defend [himself]." [Doc. 9-1 at 1-2]. While Plaintiff was being choked, he gasped for air and "struggle[ed] to breath." [Id. at 2]. Defendant Laughter and Corporal Medcalf [sic] "grabbed [Plaintiff's] left and right arms which were already handcuffed." [Id.]. "Still being choked, struggling to breath," Plaintiff "coughed up phlegm unto Lt. Holden." [Id.]. On review of Plaintiff's Amended Complaint, the Court dismissed Defendant Harris for the reasons stated in

---

[1] Plaintiff sued Defendants Holden and Laughter in their official and individual capacities and Defendant Harris in his official capacity only. [Doc. 9 at 2-3].

that Order and the matter proceeded against Defendants Holden and Laughter. [Doc. 10].

On April 28, 2020, Defendants Holden and Laughter ("Defendants") filed a Motion for Summary Judgment. [Doc. 19]. Defendants argue that summary judgment should be granted because Plaintiff failed to exhaust administrative remedies, because Heck v. Humphrey bars Plaintiff's claim against Defendant Holden, because Defendants did not use excessive force on Plaintiff, and because qualified immunity bars Plaintiff's claims against Defendants. [Doc. 20].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 21]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R.

Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))]. On May 18, 2020, a family member of Plaintiff filed an unsigned letter on Plaintiff's behalf, which reported that Plaintiff "would like to withdraw charges against Joshua Laughter as he was following orders…." [Doc. 22]. The Court construed the letter as a motion for voluntary dismissal and denied it without prejudice, advising Plaintiff that he may file a motion to dismiss Defendant Laughter, but that he must do so on his own behalf. [Doc. 24 at 3]. Plaintiff, however, has not so moved. Furthermore, Plaintiff has filed nothing in response to Defendants' summary judgment motion. Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

In support of their summary judgment motion, Defendants have submitted their own declarations, records from a related criminal proceeding that was brought against Plaintiff in Transylvania County as more fully discussed below, the Declaration of Jeremy Queen, the Detention Center's Grievance Policy, and Plaintiff's grievances at the Detention Facility. [Docs.

4

20-1 to 20-9].

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party

5

must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following. On May 26, 2016, Defendant Holden, a Lieutenant with the Sheriff's Office,

6

arrested Plaintiff for damage to property and took him to the Detention Center. [Doc. 20-2 at ¶¶ 2-3: Declaration of Kevin Holden]. While Holden was completing the booking paperwork, Plaintiff began to curse and became verbally abusive. Holden finished the paperwork, walked over to Plaintiff where he was seated on a bench, and told him to calm down. [Id. at ¶ 4-5]. Plaintiff stood up from the bench, walked toward Holden, and said "take off this [expletive] cuff and I'll beat your ass like a man." [Id. at ¶ 5]. Holden again told Plaintiff to calm down. [Id.]. In response, Plaintiff clinched [sic] his fist and pulled back as though he was going to hit Holden. [Id.]. Holden pushed Plaintiff backwards into the wall to prevent Plaintiff from hitting him. [Id. at ¶ 6]. Holden again told Plaintiff to calm down and Plaintiff continued to come toward Holden, so Holden again pushed him down to the bench. [Id. at ¶ 6]. Detention Officer Metcalf radioed Defendant Laughter, a Sergeant with the Sheriff's Office, for assistance with Plaintiff, who was considered a combative inmate. [Doc. 20-3 at ¶ 3: Declaration of Joshua Laughter]. Laughter came over to assist Holden in controlling Plaintiff and to prevent Plaintiff from hitting Holden. [Doc. 20-2 at ¶ 7]. When Laughter arrived at intake, he observed Holden attempting to hold Plaintiff down on the bench, while Plaintiff was cursing and yelling. [Doc. 20-3 at ¶ 4]. While Holden, Metcalf, and Laughter were attempting to control Plaintiff, Plaintiff

7

sat up and spat on Holden's chest. [Doc. 20-2 at ¶ 8]. Plaintiff continued to curse at Holden and told Laughter and Metcalf that he had no issue with them. [Doc. 20-3 at ¶ 6]. Laughter and Metcalf finally secured Plaintiff and took him to a holding cell. [Doc. 20-2 at ¶ 9; Doc. 20-3 at ¶ 8]. Holden left the Detention Center and secured a warrant against Plaintiff for malicious conduct by a prisoner. [Doc. 20-2 at ¶ 10].

On the same day, Plaintiff was charged with and arrested for malicious conduct by a prisoner in violation of N.C.G.S. § 14-258.4 for spitting on Defendant Holden while Holden was performing his duties as an employee of the Transylvania County Sheriff's Office. [Docs. 20-4, 20-5]. A jury found Plaintiff guilty of this offense and Plaintiff was sentenced to a term of imprisonment of 22 to 36 months. [Doc. 20-6 at 2]. Judgment on this conviction was entered on August 16, 2017. [Id. at 3]. Plaintiff's conviction was upheld on appeal. State v. Sisk, 820 S.E.2d 138 (2018) (unpublished decision).

The Detention Center has established a three-step procedure for submission and review of inmate grievances, which is found in the Inmate Handbook and made available to every inmate on the Detention Center Kiosk. [Doc. 20-7 at ¶ 5: Declaration of Jeremy Queen]. The grievance policy requires that all grievances be in writing. [Id. at ¶ 6; Doc. 20-8 at 2:

8

Case 1:18-cv-00366-MR   Document 25   Filed 12/29/20   Page 8 of 17

Grievance Policy]. Furthermore, all grievances must be filed within two days after the subject incident has occurred. Administration staff then attempts to resolve the grievance with the inmate. [Id. at ¶ 8; Doc. 20-8 at 2]. If the grievance cannot be resolved by administration staff, it is forwarded to Jeremy Queen, the Division Commander for Detention at the Detention Center, for review and formal resolution. [Id. at ¶¶ 4, 9; Doc. 20-8 at 2]. The inmate then receives a written response to his grievance within five business days. [Id. at ¶ 10; Doc. 20-8 at 3]. Grievances are given "prompt and fair consideration" and "the appropriate action [is] taken." [Doc. 20-8 at 2-3]. If an inmate is dissatisfied with the grievance response, he may file an appeal within two days of receiving the response. [Doc. 20-7 at ¶ 10; Doc. 20-8 at 3]. The Sheriff rules on any grievance appeals. [Id.].

Queen reviewed the grievances filed by Plaintiff between May 26, 2016 and December 19, 2019 and attached those grievances as an exhibit to his Declaration. [Id. at ¶¶ 11-12; Doc. 20-9]. During that time, Plaintiff did not file a written grievance pursuant to the Detention Center's policy against either Defendant Holden or Defendant Laughter. [Id. at ¶ 13]. In the three grievances Plaintiff filed during that time, he wrote, in full, (1) "need to talk to mrs stroup an my lawery \\assapppp// thanks james darin sisk;" (2) "please read he following;" and (3) "nee my meads please." [Doc. 20-9 at 2-4 (errors

uncorrected)].

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

The Defendants argue that the Plaintiff failed to exhaust his administrative remedies prior to filing this action and, therefore, that his Amended Complaint should be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"). [Doc. 20 at 4-6 (citing 42 U.S.C. § 1997e(a))].

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524). The Supreme Court has highlighted that the exhaustion of administrative remedies must occur before a civil action is commenced. Porter v. Nussle, 534 U.S. 516 (2002). For example, a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 Fed. App'x 845, 846 (4th Cir. 2011). In Anderson v.

XYZ Correctional Health Servs., 407 F.3d 674 (4th Cir. 2005), the Fourth Circuit determined that:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Id. at 683.

Here, the uncontroverted forecast of evidence shows that Plaintiff did not file a written grievance pursuant to the Detention Center's grievance policy against Defendant Holden or Defendant Laughter. While Plaintiff filed grievances regarding his need for his medications and his need to talk to his lawyer, he never filed a grievance complaining of excessive force by Defendants. To be sure, in his Amended Complaint, Plaintiff admits that he only "verbally lodged a grievance with [Defendants'] Superior Chief David Mahoney the Sheriff" that "Kevin Holden assaulted [Plaintiff] while being detained, choked and slammed [him] against the wall." [Doc. 9 at 7]. And, as noted, Plaintiff offered no evidence to rebut Defendants' showing that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Without such evidence, the Plaintiff has not presented a sufficient

forecast of evidence to survive the Defendants' Motion for Summary Judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (the plaintiff can survive a motion for summary judgment by providing sufficient evidence so that "a reasonable jury could return a verdict for [the plaintiff].") Accordingly, the Defendants' Motion for Summary Judgment will be granted on this ground. Because dismissals based on the failure to exhaust administrative remedies are without prejudice, the Court will also address the other grounds for summary judgment asserted by Defendants. See Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.). ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

### B. Heck v. Humphrey

Defendant Holden argues that Plaintiff's claim against him is barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim

12

> for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87 (footnotes omitted; emphasis added). Plaintiff's claim against Defendant Holden, therefore, is barred by Heck if a judgment in favor of Plaintiff would "necessarily imply the invalidity" of Plaintiff's conviction for malicious conduct by a prisoner. Ballenger v. Owens, 352 F.3d 842, 846 (4th Cir. 2003).

The offense of malicious conduct by a prisoner under N.C.G.S. § 14-258.4 includes the following elements: (1) the defendant threw, emitted, or caused to be used as a projectile a bodily fluid or excrement at the victim; (2) the victim was a State or local government employee; (3) the victim was in performance of his or her State or local government duties at the time the fluid or excrement was released; and (4) the defendant acted knowingly and willfully and was in the custody of any law enforcement officer. State v.

13

Heavner, 741 S.E.2d 897, 901 (N.C. Ct. App. 2013). Self-defense is a defense to this offense. See State v. Harper, 212 N.C. App. 693 (2011) (unpublished decision) (granting new trial where trial court failed to instruct jury on the issue of self-defense where § 14-258.4 defendant's testimony supported such instruction).

Plaintiff was convicted for malicious conduct by a prisoner under N.C.G.S. § 14-258.4 for spitting on Defendant Holden. Because self-defense is a defense to this offense, Plaintiff's claim that Defendant Holden used excessive force in subduing Plaintiff, if proved, necessarily would imply the invalidity of Plaintiff's conviction for malicious conduct against Holden. See Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996) (holding Heck barred prisoner's § 1983 claim against officer for excessive force while apprehending the plaintiff where the plaintiff was convicted of battery of the officer during the course of the apprehension). See also Cummings v. City of Akron, 418 F.3d 676, 682-83 (6th Cir. 2005) (finding Heck barred plaintiff's excessive force claim where struggle between plaintiff and officer defendants gave rise to plaintiff's assault conviction and the excessive force claim and assault conviction were "inextricably intertwined").

As such, because Plaintiff's conviction has not been overturned, his § 1983 claim for excessive force against Holden is barred by Heck.

## C. Use of Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

The uncontroverted evidence before the Court leaves no room for doubt that the force used on Plaintiff was reasonable and well within constitutional limits. Plaintiff was cursing, yelling, and threatening Defendant

Holden and outwardly manifesting an intention to assault Holden. Despite several attempts by Holden to calm Plaintiff without the use of force, Plaintiff persisted in his aggressive and combative behavior. Defendant Holden's use of force on Plaintiff was objectively reasonable as a matter of law under these circumstances. Furthermore, any force that was used by Defendant Laughter is assisting to control Plaintiff was also objectively reasonable. Ultimately, Plaintiff could be subdued only with the concerted effort of three people. As such, there is no genuine issue of material fact as to Plaintiff's excessive force claim and it will be dismissed on those grounds.

### D. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and

protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendants violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims. As such, Defendants' Motion for Summary Judgment based on qualified immunity will be granted.

## V. CONCLUSION

For the reasons stated herein, the Court will grant Plaintiff's motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 19] is **GRANTED** and this action is hereby **DISMISSED with prejudice**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: December 29, 2020

Martin Reidinger
Chief United States District Judge